**COPPERHEAD COAL COMPANY, Inc.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 13702.

United States Court of Appeals
Sixth Circuit.

Dec. 4, 1959.

John Kennedy Lynch of Fink, Lynch & Matia, Cleveland, Ohio, for petitioner.

Helen A. Buckley, Washington, D. C. (Charles K. Rice, Lee A. Jackson and A. F. Prescott, Washington, D. C., on the brief), for respondent.

Before McALLISTER, Chief Judge, and MILLER and WEICK, Circuit Judges.

McALLISTER, Chief Judge.

This is a petition for review of a decision of the Tax Court finding that the basis of petitioner's depreciable assets was $650,000.00, instead of $1,000,000.00, which petitioner contended it had paid for the tangible assets in question.

The government claimed, and the Tax Court found, that although, in the contract of purchase of the assets, the cost was set forth as $1,000,000.00, the actual value of the tangible assets was $650,000.00, while the balance of the purchase price, in the amount of $350,000.00, was for intangibles in the nature of good will, or value as a going concern, which was not entitled to depreciation.

The background of the case is as follows: In 1943, Mr. and Mrs. W. W. Hoobler and Mr. and Mrs. Otis C. German formed a partnership, in Ohio, under the name of Copperhead Coal Company for the strip-mining of coal. The husbands were the active partners; and the firm owned mining equipment and part of the land it mined. It had leases to other lands, which were held in trust for the daughters of each family.

On December 9, 1949, a corporation was formed by third parties, under the name of the Copperhead Coal Company, Inc., which purchased the interests of the prior parties. None of the partners became stockholders in the new corporation. One of the new stockholders was a son of the Germans; and another, the son-in-law of the Hooblers. Two of the members of the prior partnership, Mr. Hoobler and Mr. German, were employed by the new corporation on a part-time basis at a nominal salary and given the title of co-managers.

The corporation, as above mentioned, purchased the property of the partnership for $1,000,000.00. Each item of the machinery and equipment sold was listed in the contract; and, opposite each item was set forth its agreed sale price. The contract of sale provided for a down payment of $100,000.00, which the corporation paid by means of borrowing $15,000.00 from each of the six stockholders. The balance of $900,000.00 was to be paid, according to the contract, in seventy-two months. At the time of hearing before the Tax Court, the entire $1,000,000.00 had been paid with the exception of $87,500.00.

The Copperhead Coal Company, Inc., after its purchase of mining equipment and coal leases, commenced mining operations. Upon the acquisition of the machinery and equipment, each asset was entered upon its books and records at the amounts shown in the contract, and in the aggregate amount of $1,000,000.00.

In filing its tax returns for each of the years 1950–1953, inclusive, petitioner used as the basis for depreciation the amounts set forth in the contract and according to its books.

The Commissioner of Internal Revenue, in his notice of deficiency, reduced the claimed depreciation for the year 1950 and explained the reduction as follows: "In accordance with the provisions of Section 23(l) of the Internal Revenue Code of 1939 [26 U.S.C.A. § 23(l)], the amount of $48,641.75 has been determined to be the allowable deduction from gross income. Accordingly, the difference of $113,760.19 is disallowed as a

deduction of your return." [1] The deficiency was based upon a valuation of petitioner's tangible assets of $413,000.00 instead of $1,000,000.00, as claimed by petitioner.

A similar explanation was given in the statutory notice of deficiency with reference to the taxable years, 1951, 1952, and 1953.

On each of the tax returns, petitioner, as above mentioned, used as the basis for computing the depreciation of certain assets, consisting of machinery and equipment, the purchase price thereof, namely, $1,000,000.00, as itemized in the Agreement of Sale.

When the Commissioner issued his statutory notice of deficiency on May 31, 1955, Copperhead Coal Company, Inc., filed its petition with the Tax Court, claiming error on his part, and asking the court for a determination that there was no deficiency.

After a hearing, the Tax Court issued its opinion and decision, holding that petitioner had acquired the tangible assets enumerated in its contract with the partnership at a cost of only $650,000.00, and that the balance of the purchase price, which it had paid, represented the cost of unspecified intangible assets. The Commissioner had valued the tangible assets at $413,000.00. The Tax Court increased this valuation to $650,000.00. Thus, there was a difference of $237,000.00 in the value of petitioner's tangible assets as found by the Commissioner and the Tax Court. The petitioner contends that the tangible assets were worth what was set forth in the Agreement of Purchase, and what it actually paid—$1,000,000.00—with the exception of a comparatively small balance still owing.

In the hearing before the Tax Court, petitioner introduced in evidence the testimony of various witnesses, but in many instances such testimony was refuted to some extent, either on cross-examination, or by other evidence.

It is true that the proof of the value of the tangible assets was a formidable task. They had been purchased, in many cases, long before the disinterested witnesses saw them, and they had been impaired and worn by the hardest use, being subsequently repaired, remodeled, rebuilt, and sometimes reconstructed, at immense cost, along different lines, throughout the course of the years. Evidence was adduced, and it was strongly contended that the actual value of the assets sold by the partnership was, at the time of sale, $1,000,000.00, and every

---

1. —Section 23 of the Internal Revenue Code of 1939 provides as follows:

"Deductions from gross income. In computing net income there shall be allowed as deductions: * * * (*l*) [as amended by Sec. 121(c), R.A. of 1942, c. 619, 56 Stat. 798] Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, * * *." (26 U.S.C.1952 ed., Sec. 23).

The applicable Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, are as follows:

"Sec. 29.23(*l*)–3. *Depreciation of Intangible Property.*—Intangibles, the use of which in the trade or business or in the production of income is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade or in the production of income is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business or in the production of income for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner. No deduction for depreciation, including obsolescence, is allowable in respect of good will."

Section 39.23(*l*)–3 of Treasury Regulations 118, promulgated under the Internal Revenue Code of 1939, effective January 1, 1952, is the same as the section set out above.

effort that could be made was exerted by able counsel on behalf of the corporation.

■ However, in this regard, it is to be said that one of petitioner's witnesses had never seen the equipment. Another testified that the prices of new equipment had advanced one-third between the time of their original purchase by the partners, and the time of the sale by them; but his evidence was somewhat contradicted on this point by letters he had written. Another of the petitioner's witnesses, who was, at first, interested in the purchase, testified that the quoted price of $1,000,000.00 was "to buy the company, the equipment and operation." A witness for the government testified as to dates on which the equipment had been acquired by the partners and when such items had been new. He thereafter estimated the percentage value remaining, based on the age and estimated useful life of the various items, and, thus, arrived at a determination of the value of each piece of equipment when acquired by the corporation. He also pursued a different method, by ascertaining replacement cost of like or similar equipment, new, less depreciation sustained up to the time of purchase by the corporation. In making his determination, he availed himself of information solicited by the Internal Revenue Service from manufacturers as to the cost of equipment new, as of the date of purchase by the corporation, adding to the cost the freight charges. He saw the different items of equipment and attempted to ascertain their condition, and sought to determine the estimated life of each item when new. He then subtracted the depreciation so computed, and arrived at figures of valuation of the corporation's property at the time of its purchase from the partners. Some of his testimony was objectionable as hearsay; and it occurs to us to mention that proof of this nature should be adduced in the same manner that is required in ordinary lawsuits. But whatever the error in the admission of such testimony, it is not reversible, in the light of other evidence in the case. The fact that the original cost of the equipment to the partners was $490,-000.00, was a matter to be considered with all of the other circumstances in the case, in passing upon the Tax Court's finding that the equipment was not of the value of $1,000,000.00 at the time the partners sold it to the corporation.

■ It is our conclusion, after a review of the testimony of all of the witnesses for petitioner and for the government, that the Tax Court's findings and decision cannot be said to be clearly erroneous.

■■ The fact that the good will, or the value of the company, as a going concern, was not discussed by the partners and the corporation in their negotiations, or in the contract of purchase, is not controlling, as to the government, for the recitals made in a written statement, as to the consideration received, are not necessarily conclusive, and it is always competent to inquire into the consideration and show by intrinsic evidence what the real consideration was. The Tax Court is not bound by the allocation of values made in the purchase contract, and is free to increase or decrease the amounts so allocated in accordance with the facts. See Hamlin's Trust v. Commissioner, 10 Cir., 209 F.2d 761; Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981. It was the claim of the government that petitioner purchased more than tangible assets; and that, in addition, it purchased a going business, the value of which was not subject to depreciation; and the Tax Court so found.

In accordance with the views herein expressed, the decision of the Tax Court is affirmed for the reasons stated in the opinion of Judge Forrester.