Steven **VOLOUDAKIS** and Katherine
Voloudakis, Petitioners,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 16092.

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1960.

Rehearing Denied Feb. 23, 1960.

McDannell Brown, Portland, Or., for
petitioners.

Charles K. Rice, Asst. Atty. Gen.,
Carolyn R. Just, Lee A. Jackson, Harry
Baum, Attys. Dept. of Justice, Washing-
ton, D. C., for respondent.

Before DENMAN, POPE and
CHAMBERS, Circuit Judges.

POPE, Circuit Judge.

Prior to April 8, 1947, the petitioners
had possession of a building in Portland,
Oregon, under a lease which then had
approximately nine years to run. On
that date petitioners executed an instru-
ment in which their lessor also joined,
transferring the use and occupation of
the building for a term of nine years
to Pacific Telephone and Telegraph Com-
pany. This company, here called Pacific,
agreed to pay a "rental" of $50,000 a
year. Of this sum, $1,900 per month
was to be paid to petitioners' original
lessor, owner of the building. The re-

mainder of the $50,000 was paid to petitioners in stated installments, monthly, during the full term. The sums thus collected by petitioners were reported on their income tax returns as amounts received on sale of their lease on an installment plan, and taken into account as long-term capital gains.[1] This continued for several years, but in 1956, the Commissioner, holding that the sums thus received were ordinary income from rentals, determined deficiencies accordingly for the years 1949 through 1953. He also assessed penalties for both (a) failure to file declarations of estimated tax and (b) substantial underestimation of estimated tax in each of these years. Upon petition for redetermination of deficiency, the Tax Court upheld the Commissioner.

Upon this petition for review petitioners state the question presented by them as follows: "The decision in this case hinges on the determination of whether or not the document executed April 8, 1947, by Pacific and Sweeny [the owner] constituted, in legal effect, an assignment of Appellants' leasehold interest in the premises to Pacific as contended by Appellants, or whether it was a sublease of their leasehold estate, or a part thereof to Pacific, as held by the Tax Court."

Sweeny Investment Company, (here called Sweeny), was owner of the premises which it leased to petitioners on March 5, 1946, for a term of ten years. The rental was $1600 per month. After petitioners had occupied the property for nearly a year Pacific approached them through a realtor, and obtained an offer of sublease subject to procuring Sweeny's consent. The result of these negotiations was the execution by Sweeny and petitioners "as Lessors", and Pacific "as Lessees", of a written agreement which recited that "The Lessors hereby lease to the Lessee" the described property for a term of nine years. The agreement provided for the payment of rent to Sweeny and to petitioners, at the rate of $1900 per month to Sweeny and $2266.67 per month to petitioners. It authorized the remodeling of the building by Pacific and prohibited use of the premises in violation of law or in any manner that would increase fire insurance rates. Lessee was to keep the premises in repair, except for the roof, which Sweeny agreed to maintain.

Lessee Pacific agreed to indemnify the Lessors from liability growing out of claims for injuries or damages received by any person in or about the premises caused by neglect or failure of the Lessee. It agreed not to assign the lease or sublet the premises without the consent of the Lessors. Paragraph 22 of the lease reads as follows: "If the Lessee shall fail to pay any rent or other payments provided for in this lease, or if the Lessee shall default in the performance of any of its covenants in this lease, and if such default is not remedied within thirty (30) days after written notice thereof, Lessors without further notice or demand may enter upon and repossess the premises and expel the Lessee and those claiming under it and remove its effects without being deemed guilty of trespass and without prejudice to any remedies which may be used for arrears of rent or preceding breach of covenant."

1. Appended to each return was the following explanation:
"On April 8, 1947, taxpayer entered into an agreement with the Pacific Telephone and Telegraph Company, whereby the company would purchase the taxpayers' interest in the property leased by the taxpayer from Sweeney Investment Co., Spokane, Washington. Taxpayer had previously entered into a lease on March 1, 1946, for a period of ten years with Sweeney Investment Co. for the property which was now made available to the Pacific Telephone and Telegraph Co., for a total price of $237,130.41 which payments are to be made by that company to the taxpayer from April 8, 1948 to March 6, 1956. This transaction constitutes a sale of the original lease with the profit being reported on the installment plan as less than 30% of the sales price was received during the initial year 1947."

Petitioners' position is that after the 1947 agreement was executed they had transferred their entire interest in the whole of the premises leaving no reversion in themselves; that therefore the payments of "rent", so called, were in truth and in fact installment payments upon the price payable for an assignment to Pacific of petitioners' entire interest. In consequence, it is asserted, the payments received were capital gains. Oesterreich v. Commissioner, 9 Cir., 226 F.2d 798, 801, is cited for the proposition, there stated, that "calling such a transaction a 'lease' does not make it such, if in fact it is something else."

Here the parties, plainly enough, *called* their agreement a lease, and the payments rental. By its terms petitioners are "lessors", they "hereby lease" to Pacific, which shall pay "rental" in stated amounts to Voloudakis. The Tax Court, in concluding that the intention of the parties here was to lease and not to sell, that it was intended that Voloudakis be lessors and Pacific lessee under a sublease, relied upon the fact that the parties called their payments rental; upon the fact that the payments were made monthly over the term of the lease, and especially upon the provision quoted above, for re-entry of petitioners, and reversion of the premises to them in case of Pacific's default.

An effort to resolve the question here presented by determining whether peti-

tioners retained a reversion, or an interest similar to a reversion, in the leased premises, is not profitable here. It is impossible to tell from the record whether the 1947 nine year lease was to expire before the end of the 1946 ten year lease. The earlier lease to petitioners was not to begin until certain former tenants vacated the premises. The evidence does not show when that was. The nine year lease expired, by its terms, on May 1, 1956. Possibly this preceded by some time the termination of the earlier lease. We cannot be sure, but as we think the fact, whatever it is, not controlling, we assume the two leases terminated simultaneously.

The briefs contain some discussion of the question whether as a rule of property, or under the law relating to leases generally, the retention by the original lessee of a right of reentry for his transferee's breach of covenant or condition, makes a transaction which otherwise would be an assignment take on the character of a sublease. On this point the authorities are not in agreement, and the text writers disagree as to which represents the weight of authority.[2] There is no Oregon case among those decisions.

But the problems presented in those cases are not the same as that before us. There the courts were concerned with such questions, for example, as whether a lease had been assigned so

---

2. Thompson on Real Property, Vol. 3A, 1959 Replacement, § 1210, p. 56: "What appears to be the majority rule holds that where the lessee sublets for the whole unexpired term, reserving a power of reentry, or if his subtenant covenants to surrender to him at the end of the term, a sublease and not an assignment results." This court followed that rule in Coles Trading Co. v. Spiegel, Inc., 9 Cir., 187 F.2d 984, 986, 24 A.L.R. 2d 702, a case arising in Arizona. To the same effect is Orr v. Neilly, 5 Cir., 67 F.2d 423. A contrary view as to the weight of authority is stated in American Law of Property, Vol. I, § 3.57, pp. 297–300. The author of that section questions the rule stated by him to be the majority rule, stating his view that the decision in any case whether an as-

signment or sublease resulted should depend upon the intention of the parties. See footnote 3, infra. Some of the cases holding the lessee's transfer for the full term of the original lease to be a sublease, have based their decisions in part upon the transfer's provision for different or additional rent, or the insertion of new provisions or conditions not found in the initial lease. See "Can There Be a Sublease for the Entire Unexpired Portion of a Term", 18 Cal.L.Rev. p. 1, at p. 13, and comment at 18 Cal.L.Rev. p. 571 on Backus v. Duffy, 103 Cal.App. 775, 284 P. 954. Both of those conditions existed here. The April 8, 1947 transfer contained a new provision concerning a remodeling of the premises by Pacific, at an estimated cost of $100,000.

that the assignee became directly liable to the lessor upon the covenants of the lease by reason of privity of estate. Here, we apprehend, the question is, whether the arrangement between the parties was such that, taken as a whole, the intention of the parties,[3] was that the payments to be made by Pacific to Voloudakis partook of the nature of rents, as ordinary income, or whether they were installments on a sale of the Voloudakis' interests in the property.

■ When all things are considered, it is plain that it was contemplated that petitioners' collections were to be of rent. When the agreement with Pacific was negotiated and drafted petitioners must have known they could have chosen to draft a completely different instrument of transfer, one which would effectuate an arrangement whereby they simply transferred their interest to Pacific and then stepped out of the picture completely, retaining only their right to receive the purchase price in monthly installments. If such a transfer were executed they could contemplate certain possible consequences. One would be that in case of default of payment of an installment their only means of enforcement of collection would be by action. Another consequence of such an outright assignment would be that Pacific could at any time, by agreement with Sweeny, modify, alter, or even surrender its lease from Sweeny.[4]

We think the agreement shows that petitioners did not want it that way. As drawn, the agreement provided petitioners with something more in the way of continuing rights. In case of default by Pacific, petitioners could on notice "enter upon and repossess the premises and expel the lessee." The continuing character of the whole agreement negatives any intention that Pacific and Sweeny could alter or terminate it without petitioners' consent. It seems clear that petitioners deliberately chose to retain these continuing interests in the leased premises for their own protection. And having made that choice, they must deal with the consequences, namely, that the payments collected partake of the nature of rents and are ordinary income.[5]

Petitioners place some emphasis upon the holding of certain Oregon cases that where a person other than the lessee is shown to be in possession of leased premises, paying rent therefor, the law will presume that the lease has been assigned to him. Such a holding has no place here, we think, where all the facts, bearing on the intention of the parties, are so fully disclosed that they rebut any such presumption. Cf. Quine v. Sconce, 209 Or. 486, 306 P.2d 420; Northwestern Mutual Life Ins. Co. v. Security Savings & Trust Co., 9 Cir., 261 F. 575.

■ Petitioners suggest an alternative aspect of the agreement of April 8,

3. American Law of Property, Vol. I, § 3.57, p. 299: "But it may be questioned that a reversion should be required. * * Actually the courts hold that, without regard to the rule followed in determining the issue between the lessor and the lessee's transferee, a given transfer may be treated as a sublease between the lessee and the transferee if such is the intent of those parties. In other words, a transfer may be treated as a sublease between the lessee and his transferee, and as an assignment between the latter and the lessor. * * * It has been suggested, therefore, that the proper rule should be that whether a given transfer is a sublease or an assignment depends upon the intention of the parties to the transfer, provided the lessor is not prejudiced thereby."

See also, 18 Cal.Law Rev. 1, cited, supra, note 2, at p. 19: "If the fundamental distinction between assignment and sublease is to be recognized, as it seems desirable that it should be, the category into which a particular transfer is to be placed should depend not upon the existence of a technical reversion in point of time but upon the intention of the parties to the transfer."

4. The only possible effect of that upon the original lessee would be to release him from his secondary liability for rent, American Law of Property, Vol. I, § 3.61, p. 311, and he could not object to that.

5. To come to this conclusion it is unnecessary to decide whether the retention of a right of reentry is or is not equivalent to a reversion.

1947. They say: "This new agreement clearly was a direct and complete substitute for the original lease of March, 1946, by which the owner, Sweeny, leased to Pacific the identical property for the precise period of time and under practically identical conditions and terms specified in the original lease. Pacific became a direct lessee in possession under Sweeny replacing appellants."

We think this new, substitute agreement theory in no way aids petitioners. Viewed as an original lease from Sweeny to Pacific, it nevertheless reserved rent, stated to be $50,000 per year, payable monthly. The provision that a portion of this rent should be paid to petitioners could not operate to make it other than rent, in the ordinary sense of that term. It would certainly have no resemblance to a sale of a capital asset.

We think this new, substitute agreement theory in no way aids petitioners. Viewed as an original lease from Sweeny to Pacific, it nevertheless reserved rent, stated to be $50,000 per year, payable monthly. The provision that a portion of this rent should be paid to petitioners could not operate to make it other than rent, in the ordinary sense of that term. It would certainly have no resemblance to a sale of a capital asset.

We hold that the Tax Court was correct in holding that the amounts received by petitioners from Pacific during the years in issue constituted rental income taxable under § 22(a) of the 1939 Code, 26 U.S.C.A. § 22(a).

■ As for the Tax Court's decision sustaining the Commissioner's additions to the tax for substantial underestimation of tax, (where he had also made additions for failure to file declaration of estimated tax), that may not stand in view of the decision of the Supreme Court in Commissioner of Internal Revenue v. Acker, 1959, 80 S.Ct. 144. The decision of the Tax Court is modified by our holding that the additions to tax purportedly made under § 294(d) (2) of the 1939 Code, 26 U.S.C.A. § 294(d) (2), for substantial underestimation of estimated tax were unauthorized. As so modified, the decision of the Tax Court is affirmed.

Judge DENMAN'S death followed the argument but preceded the decision in this case.