COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

CHATSWORTH STATIONS, INC., Respondent.

No. 11, Docket 25527.

United States Court of Appeals Second Circuit.

Argued March 28, 1960.

Decided July 28, 1960.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Kenneth E. Levin, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Alvin Wayne, New York City (Norman W. Arnheim, New York City, of counsel), for respondent.

Before WATERMAN, BARNES* and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

Respondent is a New York corporation engaged in the distribution of automobile petroleum products. It has been able to purchase petroleum products from oil companies at less than prevailing posted dealers' prices. Accordingly it sought to accumulate a number of gasoline sta-

* Of the Ninth Circuit, sitting by designation.

tions as retail outlets for these products. During the taxable years involved in the present case it did not itself operate any retail gasoline stations; instead it leased gasoline stations to independent operators with the proviso that the lessees would purchase their petroleum requirements exclusively from respondent or its designee. Apparently, although we have found no express confirmation of this assumption in the record, the lessee would retail the petroleum products under respondent's trade name. The present case involves four gasoline stations in New York City which respondent came to control either by purchase or lease in the period between August 25, 1949 and March 15, 1950. These four stations, in the order of respondent's acquisition, are designated herein as: the Third Avenue Station, the Soundview Avenue Station, the Grand Concourse Station, and the Fort Hamilton Parkway Station. Prior to obtaining control of each station respondent selected the individual to whom it was to lease the station, and the lease between it and this individual was executed either before respondent obtained control of the station or immediately thereafter. In the case of each station, simultaneously with the execution of each lease, respondent in a separate document purported to sell to its lessee the good will of the gasoline station. The Tax Court held that it was an established practice in the New York area to make this kind of payment for the good will of a gasoline station. The Tax Court also held that the amount of stated rent respondent charged its lessees was not low enough to justify a conclusion that the purported "good will" payments to respondent were in reality prepayments of rent. Finally, the Tax Court held that the several sums which respondent received for the sale of good will were never more than the sums which respondent had itself paid therefor; and that, accordingly, respondent had not realized any gain by these purported transfers of good will assets. For reasons which will become apparent the Tax Court's Findings of Fact as to the transactions involving each of the four stations must be set forth in detail.

### Third Avenue Station

On August 3, 1949 respondent agreed to purchase from Harold and William Sigman the real property, the service station business, the good will, and the fixtures and equipment of this station. The purchase price was $25,750 and a bill of sale was executed August 25. In neither the purchase agreement nor the bill of sale did the Sigmans or respondent allocate the purchase price among the various assets purchased. Moreover, there is nothing in the Tax Court's Findings of Fact to suggest that the Sigmans and respondent reached any parol agreement as to the allocation of the purchase price. Nor do the Findings of Fact indicate any such allocation with respect to the other three stations.

In an undated agreement executed sometime prior to August 25, respondent agreed to lease the property to Harry Pariser. The lease was to be for a term of fifteen years to commence October 1, 1949. The annual rent was to be $1,800. In a separate document, but executed simultaneously and as a "condition precedent" to the granting of the lease, Pariser agreed to pay respondent $4,500 for the station's good will.

### Soundview Avenue Station

On September 26, 1949 respondent agreed to purchase from Frank and John Certo the Certos' lease of this station "together with the good will thereof." The total purchase price was $25,000. The Certos' lease had approximately eighteen years to run.

On October 1 respondent subleased the station to Harold and William Sigman. The rent was to be the same as that paid by the Certos under the original lease, and the sublease was to expire on the same date as the original lease. On September 30 as consideration for respondent's granting the sublease to them the Sigmans agreed to pay respondent $16,000 for the "continued operation" of the station. Of this sum $10,000 was

to be paid in a series of monthly serial promissory notes.

### Grand Concourse Station

On November 1, 1949 respondent entered into a ten-year lease from Millie Katz covering this real property and the gasoline station and its equipment thereon. She was herself a lessee, and the length of her lease has been undetermined. For all that we can discover no mention was made of transferring the good will. The annual rent was $18,000 and respondent was given an option to renew for an additional five years.

On October 21 respondent agreed to lease the station to Rene Gouirand for the same ten-year period with the same option to renew for five years. The rent was to be the same as respondent's rent to Millie Katz, $18,000 a year. In addition, Gouirand agreed to pay respondent $17,500 for the good will of the station. Gouirand also agreed that, at the expiration of the lease, he would turn over to respondent a list of his charge customers, which list, in turn, respondent had agreed to deliver to Millie Katz.

### Fort Hamilton Parkway Station

On March 15, 1950 respondent purchased from Jack Chanin this realty, together with the gasoline station and four stores located thereon. The purchase price was $105,000. In its Findings of Fact the Tax Court states that of this purchase price $80,000 " * * * was attributed to the realty and $25,000 was attributed to the gas station good will with equipment and possession * * *." However, it is clear that this attribution was not made by the parties to the sale of the property but was made in an undated letter to respondent's secretary by the real estate broker who acted as agent for respondent. Indeed, we can discover nothing from the Tax Court's Findings of Fact or from the record on appeal indicating whether respondent's vendor even purported to part with the good will of the station.

On February 28 respondent agreed to lease the station to Joseph Vinacour. The term of this lease was to be twenty-one years with an annual rental of $5,100. In addition, Vinacour agreed to purchase the good will of the station for $25,000.

 The sale of a going business is to be comminuted into its fragments. Williams v. McGowan, 2 Cir., 1945, 152 F.2d 570, 572, 162 A.L.R. 1036. Although the parties to the sale of a going business may expressly provide for the allocation of the purchase price among the various assets sold, the Commissioner is not bound to accept the parties' allocation; instead he may reallocate the purchase price according to what he deems to be the realities of the transaction. Copperhead Coal Co. v. C.I.R., 6 Cir., 1959, 272 F.2d 45. If the taxpayer attacks the Commissioner's allocation, the taxpayer carries the burden of proof. Cf. Ullman v. C.I.R., 2 Cir., 1959, 264 F.2d 305, 308. The taxpayer's burden in challenging the Commissioner's allocation is more difficult to sustain where, as here, the parties have made no express allocation of the purchase price. Violet Newton, 1949, 12 T.C. 204; Mertens, Law of Federal Income Taxation, § 22.51. In order for us to sustain the holding of the Tax Court that respondent realized no gain upon its sale of the good will in each of the four stations, that Court's Findings of Fact must indicate a rational basis for the conclusion that respondent sustained its burden of proof that it sold the good will at no greater price than the price at which the good will was purchased. We find nothing to indicate how the Tax Court determined the amount that taxpayer paid for the good will of the stations as distinct from the amount it paid for the land, buildings and equipment, and intangibles other than the good will; and therefore we are required to remand the case for further findings. Cf. Gilbert v. C.I.R., 2 Cir., 1957, 248 F.2d 399, 407–408.

 Upon remand the Tax Court should consider, *inter alia*, the following matters. With respect to the Grand Concourse and Fort Hamilton Parkway stations respondent's transferors did not

expressly contract to transfer good will, and therefore the Tax Court should consider whether in fact the good will of these stations was transferred. As bearing on the same problem, with respect to the Grand Concourse and the Soundview Avenue stations, because respondent's transferors were themselves lessees, the Tax Court should determine what interest respondent's transferors owned in the stations' good will. Finally, respondent's obligation to turn over to its transferor the customer lists of the Grand Concourse station upon the expiration of the lease constitutes an independent ground for questioning whether good will was transferred.

▮ If the Tax Court concludes that as to each station the good will was in fact transferred the Tax Court should then determine the value of all the other assets sold, including such intangible assets as the five-year covenant not to compete given by respondent's transferor in connection with the purchase of the Third Avenue station—a provision not mentioned by the Tax Court in its Findings. Good will would then be determined by deducting this amount from the purchase price.

▮ If the value of the good will is computed directly, the Tax Court should consider how long each station had previously been in operation, whether lists of previous customers existed and whether these lists were to be turned over to respondent, whether the old personnel was to remain under the new management, and whether, as appears quite likely, the stations were to operate under a new trade name. All these and other circumstances may bear upon the valuation of good will. See and compare Pfleghar Hardware Specialty Co. v. Blair, 2 Cir., 1929, 30 F.2d 614; Grace Bros. v. C.I.R., 9 Cir., 1949, 173 F.2d 170; In re Brown's Will, 1926, 242 N.Y. 1, 150 N.E. 581, 44 A.L.R. 510.

▮ The Tax Court could find that the amount respondent paid for the good will of the stations was less than the amount respondent's lessees purported to pay for good will. If the discrepancy between the two amounts is sufficiently large, a portion of the lessees' "good will" payments could well be regarded as a prepayment of rent.

Although we here remand the case for further findings, we have considerable doubt as to whether it was possible, as a matter of tax law, for respondent to have *sold* the good will of the stations. The regulations provide that the sale of "good will" will be treated as such for tax purposes " * * * only when the business or a part of it, to which the good will attaches is sold * * *." Treas. Reg. 111, § 29.22(a)-10. Hence it may be reasoned that one cannot transfer a greater estate in the good will of a business than the estate one transfers in the business to which the good will attaches.

▮ Thus, with respect to the Third Avenue and Fort Hamilton Parkway stations, the good will would have been only a leased good will, and the amounts respondent received in payment might well be ordinary income under the Supreme Court's holding in C.I.R. v. P. G. Lake, Inc., 1958, 356 U.S. 260, 266, 78 S. Ct. 691, 2 L.Ed.2d 743, rehearing denied 356 U.S. 964, 78 S.Ct. 991, 2 L.Ed.2d 1071, and Hort v. C.I.R., 1941, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168. With respect to the Soundview Avenue and Grand Concourse stations it is true that respondent did not retain any reversionary interest, but this fact does not invariably preclude ordinary income treatment of sums paid to lessees. See Voloudakis v. C.I.R., 9 Cir., 1960, 274 F.2d 209; see also Mertens, Law of Federal Income Taxation, § 22.35.

The questions we have discussed in the preceding two paragraphs were not sharply presented to the Tax Court nor were they briefed before us. If the Tax Court now finds that the good will of any of the stations was transferred to respondent, and that on the facts here present the good will so transferred is capable of monetary evaluation, the legal questions we discussed in the preceding two paragraphs would then have to be resolved.

Reversed and remanded for further proceedings in conformity with this opinion.

MOORE, Circuit Judge (dissenting).

I find no reason upon the facts or the law for remand. The documents evidencing the transactions are before the court and are unambiguous. They may be easily construed as a matter of law. No issue of good will, in my opinion, exists in this case. The term has been artificially injected into it by the taxpayer and the Tax Court. Four gasoline stations were acquired by the taxpayer, two by purchase, two by lease. All four were then leased; none was sold. Whatever good will may have been attached to the properties, its value was included in the acquisition price. No sums were specified as good will. Since none of the properties was sold there could have been no sale of good will. If there were any good will value it could have been reflected only in the rental charged. The special payments received by the taxpayer although denominated "goodwill" were actually a part of the consideration for the leases and sub-leases—hence either prepaid rent or a bonus.

Section 29.22(a)-10 of Treasury Regulations promulgated under the Internal Revenue Code of 1939 provides that "Gain or loss from a sale of good will results only when the business, or a part of it, to which the good will attaches is sold, * * *." Because here no business was sold, the factual premise for the application of a gain or loss conclusion is wholly lacking. The elaborate hypothetical factual research—now after 11 years practically antiquarian—suggested by the majority, in my opinion, can only create confusion. To try to find a value (or better to speculate as to a value) for good will and then to write this value into the original acquisition contracts, is indeed to create business arrangements which the parties themselves never entered into at the time. Then to determine gain or loss a second contrary-to-fact hypothesis is required because the taxpayer did not convey or have the legal power to convey to its lessees. There may have been certain tax advantages which the taxpayer hoped to gain by accepting lump sum payments and attributing them to good will but to achieve such advantages the transactions must have had business and legal reality (see Gregory v. Helvering, 1935, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, and the many cases applying variations of its doctrine).

The taxpayer has also failed to sustain its burden of proof "to establish the cost or other basis of the good will sold" (Sec. 29.22(a)-10).

I would reverse the decision of the Tax Court and uphold the Commissioner's determination.