George D. PATTERSON, District Director of Internal Revenue, Birmingham, Alabama, Appellant,

v.

PIZITZ, INC., Successor to Louis Pizitz Dry Goods Company, Appellee.

No. 21951.

United States Court of Appeals Fifth Circuit.

Dec. 1, 1965.

Certiorari Denied Feb. 21, 1966.

See 86 S.Ct. 895.

---

1. Articles 6316a, 6319, 6336, 6351, 6509 and 6550, Revised Civil Statutes of Texas.

William S. Pritchard, Winston, B. Mc-Call, Birmingham, Ala., Pritchard, Mc-Call & Jones, Birmingham, Ala., of counsel, for appellee.

Before MARIS,* RIVES, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

This is an appeal from a judgment for the taxpayer entered on a jury verdict. The taxpayer is a corporation operating a department store in Birmingham, Alabama. The reserve method for computing deductions for bad debts under Section 166(c) of the Internal Revenue Code of 1954 was used. 26 U.S.C.A. § 166(c).[1] The reserve for bad debts was based on adding an amount annually to the existing reserve so that the total reserve at the end of the year equaled six per cent of the outstanding accounts receivable. The addition which was made after charging bad debt losses taken during the year to the existing reserve is what is claimed as a deduction on the income tax return.

The deduction in issue here is in the amount of $65,694.53 for an addition to reserve for the fiscal year ending January 31, 1960. The Commissioner disallowed the entire deduction on the theory that the reserve in the amount of $173,-295.81 on hand at the end of the fiscal year was ample. This figure represented the bad debt reserve at January 31, 1959 of $237,331.81 less net charge offs during the year of $64,036.00.

■■ The applicable principle of law was stated by the Tax Court in Krim-Ko Corp. v. Commissioner, 16 T.C. 31 (1951) at 37:

> " * * * [T]he crux of the matter is not whether the additions to the reserve are sufficient to absorb the bad debts that might arise dur-

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty. Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Gilbert E. Andrews, J. Edward Shillingburg, Attys., Dept. of Justice, Washington, D. C., E. Ray Acton, Asst. U. S. Atty., of counsel, for appellant.

---

* Of the Third Circuit, sitting by designation.

1. 26 U.S.C.A. § 166(c):
   "In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

ing the years involved. Rather, the question is whether the reserve itself was sufficient for that purpose. And if the Commissioner was justified in concluding, in the light of prevailing conditions, that the reserve already on the taxpayer's books was adequate, we cannot overturn his exercise of discretion to disallow further additions to the reserve."

See also Roanoke Vending Exchange, Inc. v. Commissioner, 40 T.C. 735 (1963) at 740–741; and Platt Trailer Co. v. Commissioner, 23 T.C. 1065 (1955) at 1070.

Generally stated it appeared from the evidence tending to support the Commissioner that he allowed taxpayer to use the six per cent formula beginning with the fiscal year ending in 1956. Theretofore taxpayer had used a basis of reserving seven and one half per cent of open accounts receivable and ten per cent of revolving or long term accounts receivable. The reserve at the end of the fiscal year 1956 was $232,576.00. The following chart demonstrates the bad debt losses for the five year period ending with the fiscal year in question.

| Year Ended | Accounts Receivable | Charged Off | Recovered | Net Loss |
|---|---|---|---|---|
| 1/31/56 | $ 3,914,148 | $109,791 | $ 17,362 | $ 92,429 |
| 1/31/57 | 4,063,881 | 112,571 | 26,419 | 86,152 |
| 1/31/58 | 4,046,782 | 108,925 | 39,004 | 69,921 |
| 1/31/59 | 3,958,084 | 101,843 | 43,622 | 58,221 |
| 1/31/60 | 3,984,986 | 100,565 | 36,529 | 64,036 |
| Totals | $19,967,881 | $533,695 | $162,936 | $370,759 |

Thus it appears that the accounts receivable averaged approximately $4,000,000.00 annually and that the bad debt loss averaged $74,000.00 or just under two per cent. The loss amounted to 2.3 per cent for 1956, 2.12 per cent for 1957, 1.73 per cent for 1958, 1.47 per cent for 1959 and 1.6 per cent for 1960. The reserve at the end of fiscal year 1960 in the amount of $173,295.81 was 4.3 per cent of the accounts receivable.

The taxpayer sued for refund after having paid the tax due following the disallowance of the deduction. The District Court submitted the question of whether the Commissioner abused his discretion in refusing to allow the deduction to a jury which answered in the affirmative. The motion of the Director for a directed verdict was denied as was his motion for judgment notwithstanding the verdict. Rule 50, F.R.Civ.P. This appeal followed the denial of the latter motion.

■ The question presented is whether the evidence and the inferences adduc-

ed therefrom, when viewed in a light most favorable to the taxpayer, justified submitting the case to the jury on the issue of abuse of discretion on the part of the Commissioner in the premises. Swift & Company v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115. See also United States v. Byck, 5 Cir., 1963, 325 F.2d 551; and Hogan v. United States, 5 Cir., 1963, 325 F.2d 276.

We begin then with the fact that the amount of the receivables and the bad debt losses remained relatively stable or constant throughout the five year period of 1956–1960, and that the bad debt reserve as of the end of the 1960 fiscal year was more than twice what might be anticipated by way of bad debt losses based on the experience during the five year period. As against this the taxpayer offered the following evidence to show the requisite abuse. The testimony of its accountant was that a reserve of six per cent of accounts receivable was necessary, and that the Commissioner had allowed the use of the six per cent formula as described throughout the period of five

years. There was evidence that delinquencies were increasing as were the type of accounts which were more susceptible to becoming delinquent. There was proof that recoveries on charge offs would have been decreased had legal expenses incurred in the process of recovery been deducted from the recoveries rather than as a general operating expense. This would have resulted in a decrease in the reserves on hand of approximately $12,000.00 at the end of fiscal 1960, or $55,000.00 during the five year period. There was some evidence that economic conditions in the Birmingham area were on the down grade beginning in 1957. Automation was a problem and the work force in the area had decreased from a high of 210,850 in June of 1957 to an average of 196,600 for 1959. Strikes were also a problem. Moreover, taxpayer relied on the fact that its credit policy was liberalized in 1958 but subsequent experience did not support its contention that substantially more losses would result.

■ Considering the evidence on balance, we find that it does not rise to that level of proof which would show an abuse of discretion on the part of the Commissioner. In Maverick-Clarke Litho Co. v. Commissioner of Internal Revenue, 5 Cir., 1950, 180 F.2d 587, 592 we said:

> "The Commissioner, under the applicable statute, was vested with a discretion in determining what constituted a reasonable addition to a reserve for bad debts and his determination is entitled to more than a mere presumption of correctness. The burden was on petitioner to show that the Commissioner abused his discretion and its proof falls far short of meeting that heavy burden."

We there relied on United States v. Beckman, 3 Cir., 1939, 104 F.2d 260 where the court equated abuse of discretion by the Commissioner with arbitrariness. See also Lucas v. Kansas City Structural Steel Co., 1930, 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848; and

Mertens, Law of Federal Income Taxation, Vol. t, § 30.74.

The proof here showed only that the Commissioner, in effect, reduced the reserve to accord with taxpayer's loss experience in the light of existing circumstances bearing on credit losses. There are, of course, strong factually based arguments against his judgment in so doing but they fall short of establishing arbitrariness.

It follows that the District Court erred in failing to grant the motion of the Director for judgment notwithstanding the verdict. The case is reversed and remanded for entry of judgment for the Director.

Reversed and remanded with direction.