**DIXIE FURNITURE COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 18874.

United States Court of Appeals
Eighth Circuit.

March 5, 1968.

W. G. Dinning, Jr., Helena, Ark., for petitioner.

Donald A. Statland, Atty., Dept. of Justice, Washington, D. C., for respondent, Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

The Tax Court (Judge Atkins) has upheld the Commissioner's determination of a deficiency of $2,251.14 in Dixie Furniture Company's corporation income tax for its fiscal year ended April 30, 1962. T.C. Memo 1966–278, 25 T.C.M. 1441 (not reviewed by the full court). Dixie petitions for review. Our jurisdiction under § 7482 of the Internal Revenue Code of 1954 is established.

The taxpayer is an Arkansas corporation chartered in May 1948. It is a retailer of furniture and appliances. It has six stores in eastern Arkansas. Its customers are lower to middle income families. Over 90% of its business consists of instalment sales with an average pay-off period of about 30 months.

Dixie maintains its records on the accrual basis. In place of taking deductions for specific bad debts, it has always used the reserve method permitted by § 166(c) of the 1954 Code * and § 23(k) (1) of the 1939 Code, and by Treas.Regs. § 1.166–1 and –4, and Treas.Regs. 118 (and 111) § 39.23(k)–1(a) and –5(a).

The sole issue here is the propriety of the Commissioner's disallowance of that portion of the taxpayer's fiscal 1962 deduction for its addition to its bad debt reserve which would have increased that reserve above its balance at the beginning of the fiscal year.

Dixie's accounts receivable at the end of fiscal 1962 totalled $676,857.02. With

---

\* § 166. Bad debts
    (a) General rule.—
        (1) Wholly worthless debts.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * * (c) Reserve for bad debts.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

the exception of fiscal 1961, when they remained essentially unchanged, Dixie's receivables steadily increased with its growing business. The taxpayer's most adverse net bad debt experience for any one fiscal year (1955) was 4.3% of outstanding receivables. The average for its corporate life, that is, fiscal 1949/61, inclusive, was about 1.5%. During the same period the reserve varied from a low of 6% (1949) to a high of 13% (1953). It was kept constant at 8%, however, for the three years 1959/61. The agent who examined the returns for those three years approved additions and the deductions therefor, which served to maintain the 8% level. It had been higher all through the nine preceding years.

On May 1, 1961, the reserve was $49,-819.44. Dixie's net chargeoffs for fiscal 1962 were $12,632.11. It asserted a deduction of $16,961.23 as a bad debt reserve addition. This, again, was the amount necessary to maintain the account at 8% of the increasing total of accounts receivable. The Commissioner's determination restricted that deduction for fiscal 1962 to the net chargeoff figure for the year.

We affirm the decision of the Tax Court and do so on Judge Atkins' careful and correct reasoning and on the supporting authorities he cited:

The "reasonable addition to a reserve for bad debts", allowable under the statute, is, as the judge said, "that amount necessary to bring the balance in the reserve to an amount which can be reasonably expected to cover anticipated losses with respect to debts outstanding at the end of the year". The Commissioner is not bound by the action of its agent who examined Dixie's returns for fiscal 1959/61 and approved the 8% level. The Commissioner is vested with a discretion in determining reasonableness here and the taxpayer has the burden of showing abuse of that discretion. Other furniture companies' practices, in the absence of a showing of identity of experience, add nothing of probative value. The "ultimate question is whether the balance in the reserve at the end of the year is adequate to cover the expected worthlessness of outstanding debts and not whether the proposed addition is sufficient to absorb the estimated losses". The taxpayer's past experience is a reliable guide. The reserve already built up, namely, $49,819.44, was about 7.4% of outstanding accounts receivable. In the light of the taxpayer's experience, the Commissioner's action was fully justified.

We add only:

1. Dixie might well regard the addition allowed for fiscal 1962 as generous rather than niggardly. In the light of the taxpayer's experience an objective examiner might reasonably have concluded that even a lower amount would have been proper and could be justified. The taxpayer is well off for fiscal 1962.

2. Dixie's case obviously arises from its annoyance with the uncertainty and inconsistency of examining revenue agent determinations for successive taxable years. It asserts that there was no change whatever in its methods of accounting or operations, that its bad debt reserve additions followed the formula specifically approved by agents in prior years, and that the only difference is "the difference in the Agent". We can sympathize with Dixie's reaction to administrative inconsistency, for nearly always it is the taxpayer which has the burden of proof and it is the taxpayer which sustains the frustration and the expense of additional taxes and the interest burden they entail. It is not always easy for a taxpayer to understand and appreciate why different examining agents come up with varying results for successive tax years and yet each prevails. This, however, seems to be a way of life in tax law, particularly where the standard is one of reasonableness and human judgment as to what is reasonable is necessarily being exercised. In a slightly different context, but nevertheless one concerning federal taxes and determinations by the Commissioner, we said, very recently, that "[W]e are not inclined to let the realization of revenues stand or fall on so technical a base as impeccable consistency. Consistency is desirable but its virtue has lim-

its". Estate of Goodall v. Commissioner of Internal Revenue, 391 F.2d 775 (8 Cir. 1968). The Commissioner, we feel, has some obligation to strive for consistency. But certainly his review is not ordinarily to be rendered rigid and stratified because of his rulings for an earlier year.

3. Changes by the Commissioner in more or less established and prior approved bad debt reserve percentages have been upheld in the decided cases. Art Metal Constr. Co. v. United States, 17 F. Supp. 854, 863, 84 Ct.Cl. 312, 329 (1937), where the court said, "Each year, however, must be judged on its own particular facts and an allowance by the Commissioner for a prior year does not bind him to approve the same allowance for a later year". Paramount Finance Co. v. United States, 304 F.2d 460, 463–464, 157 Ct.Cl. 824 (1962); Ehlen v. United States, 323 F.2d 535, 539, 163 Ct.Cl. 35 (1963); Maverick-Clarke Litho Co. v. Commissioner of Internal Revenue, 180 F.2d 587, 591–592 (5 Cir. 1950); Patterson v. Pizitz, Inc., 353 F.2d 267 (5 Cir. 1965), cert. denied 383 U.S. 910, 86 S.Ct. 895, 15 L.Ed. 2d 666; C. P. Ford & Co., 28 B.T.A. 156, 159 (1933); Krim-Ko Corp., 16 T.C. 31, 36–38 (1951). See 5 Mertens, Law of Federal Income Taxation, § 30.73, p. 141, and § 30.74, p. 144 (1963).

■ 4. We do not agree with Dixie that the result of the case is to "freeze" the reserve and to deny the taxpayer the addition-to-the-reserve option of § 166 (c). What defeats Dixie here is that very section's limitation of the deduction to "a reasonable addition". The taxpayer has not proved that the addition allowed for 1962 was not, in the light of all the facts, a reasonable one.

■ 5. Neither do we agree that, as a matter of good accounting practice, a bad debt reserve must be computed strictly on the basis of a percentage of accounts receivable. A percentage may be a good starting point and acceptable temporarily. But economic conditions vary and collection experience has a way of changing. Eight percent may be appropriate for a period but may prove too generous or, indeed, too little for another time.

■ 6. The taxpayer, lastly, points out that repossessions in fiscal 1962 alone were $43,881.66 and that this figure approaches the approved $49,819.44 total in the reserve account. Perhaps so, but this repossession figure is gross and not net. In addition, there were offsetting collections of $8,306.78 on accounts charged off in prior years.

Affirmed.