MALONE & HYDE, INC.,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 76–1681.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1977.

Decided and Filed Jan. 20, 1978.

Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., Scott P. Crampton, Richard Farber, Fred Luyties, Gary R. Allen, Tax Division, U.S. Dept. of Justice, Washington, D. C., for defendant-appellant.

B. C. Clifton, Lucius E. Burch, Jr., Burch, Porter & Johnson, Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and EDWARDS, Circuit Judge, and GRAY, District Judge.*

PHILLIPS, Chief Judge.

Malone & Hyde, Inc. (hereinafter taxpayer), the plaintiff-appellee, brought an action to recover income taxes alleged to have been assessed erroneously for the fiscal years 1964–66. The district court entered judgment in favor of taxpayer for $392,212.68. The Government appeals.

The disputed assessments principally concerned an April 1964 transaction in which taxpayer contracted to purchase the assets of Ragland-Potter & Company, Inc. and the six Cooper-Martin Companies for approximately $12,000,000.[1] Although the exact amount is in dispute, approximately $3,000,000 of this sum was attributable to particular fixed assets (e. g., plant and equipment) and intangible assets (e. g., goodwill) which form the basis of this controversy. Since this was a lump sum purchase, however, none of the consideration was allocated among the individual assets. The balance of the purchase price was attributable to all other assets, including inventories and accounts receivable.

The principal dispute between the parties concerns how much of the purchase price is allocable to the depreciable tangible property and how much is allocable to the nondepreciable intangible property including stock and goodwill. The Government also disputed taxpayer's deductions for bad debt reserves and certain accounting fees.

Of the five issues contested at trial, four were submitted to the jury. The jury decided all four issues in favor of taxpayer. The district judge decided the remaining issue in favor of taxpayer as a matter of law. The Government raises four issues on this appeal: (1) whether the adjusted basis of certain stock purchased by taxpayer is the book value or the fair market value of the underlying assets at the time of sale; (2) whether there is sufficient evidence to support the jury's verdict that the Commissioner abused his discretion in determining that taxpayer's reserve for bad debts was excessive; (3) whether the district court erred in holding that taxpayer used the proper method of allocation in determining the respective values of assets acquired in its purchase of various corporations; and (4) whether there is sufficient evidence to support the jury's verdict that certain accounting fees paid by taxpayer constituted ordinary and necessary business expenses.

We reverse as to the first two issues and affirm on the third and fourth issues.

I

Paragraph 6A of the purchase agreement between taxpayer and Ragland-Potter & Company, Inc. established the method for computing the purchase price of certain assets and provides in part:

---

* Honorable Frank Gray, Jr., Senior Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

1. The aggregate purchase prices paid for the assets of Ragland-Potter and the Cooper-Martin Companies were $9,653,895.09 and $2,444,087.65, respectively. At the time of the sale, Ragland-Potter was engaged in the wholesale grocery business and the Cooper-Martin Companies were engaged in the retail grocery business in Tennessee. Following the sales transaction in question, the assets of Ragland-Potter and the Cooper-Martin Companies were transferred to taxpayer's wholly owned subsidiaries Ragland-Potter, Inc. and Cooper-Martin, Inc. Subsequently, in June 1968, Ragland-Potter, Inc. and Cooper-Martin, Inc. were merged into Malone & Hyde, Inc.

In exchange for the Acquired Assets, Purchaser will pay to Seller an aggregate consideration equal to the sum of the following: (a) $1,328,000.00, representing the sum of (i) the amount by which the present fair market value of the fixed assets (including the vehicles owned by R–P Equipment Company) and leasehold interests to be acquired exceeds their net book value and (ii) the value of the intangible assets to be acquired, other than common stocks; (b) the aggregate value of all inventories * * *; (c) the aggregate value of all receivables * * *; (d) the net book value of the fixed assets of the Seller * * *; (e) $272,000, representing the capital stock of Valu-Plus Trading Stamp Association owned by Seller; and (f) the net book value of the capital stock of R–P Equipment Company.

At trial, taxpayer argued that the adjusted basis of the R–P Equipment Company stock was the net book value of the underlying assets which were valued at $159,120.52.[2] The effect of this interpretation was to make a greater portion of the $1,328,000.00 premium allocable to the depreciable fixed assets. The Government, on the other hand, argued that the adjusted basis of the stock should be the fair market value of the underlying assets which were valued at $346,105.63.

In its memorandum decision, the district court ruled in favor of taxpayer as a matter of law. The court concluded that subsection (f) of paragraph 6A was separate from subsection (a), and further determined that under subsection (f) the agreed purchase price for the stock was its book value. The effect of this ruling was to validate taxpayer's claim that the aggregate purchase price of the tangible and intangible assets acquired was $2,996,990.51.

We conclude that the district court erred in its interpretation of paragraph 6A. Under settled principles of construction, this contract must be read as a whole so as to give meaning and effect to all its provisions. The decision of the district court gives effect only to subsection (f) and accords no meaning or effect to the preceding provisions of the paragraph. When the paragraph is read as a whole, we construe it to mean that taxpayer obligated itself to pay the net book value of the capital stock of R–P Equipment Company as provided in subsection (f), *plus* a premium equal to the excess of the fair market value of the vehicles owned by the corporation over their book value. Under our construction of paragraph 6A, the correct valuation of the stock is $346,105.63.

To hold otherwise and affirm the district court would mean that $186,985.11 of the purchase price (the difference between the fair market value and the book value of the vehicles) would be allocated for depreciation purposes to other assets of Ragland-Potter. This could not have been intended and, even if intended, the Government could have refused to be bound by such an allocation since it would obviously have been unreasonable. *See Copperhead Coal Company, Inc. v. Commissioner of Internal Revenue,* 272 F.2d 45 (6th Cir. 1959); *Commissioner of Internal Revenue v. Chatsworth Stations, Inc.,* 282 F.2d 132, 135 (2d Cir. 1960).

Accordingly, the judgment of the district court is reversed with respect to this issue.

## II

In 1964, when Ragland-Potter, Inc. filed its first income tax return, it established a $2,000 reserve for bad debts. For fiscal years 1965 and 1966, it added to the reserve and deducted for tax purposes $43,078.24 and $112,798.00, respectively which was substantially in excess of the amount of bad debts actually sustained. The Commissioner disallowed the deductions in substantial part, allowing deductions of only $5,876.24

---

**2.** R–P Equipment Company was a holding company which held title to vehicles and equipment formerly owned by Ragland-Potter & Company, Inc. As of the closing date for the purchase agreement, the appraised fair market value of the vehicles owned by R–P Equipment Company, plus the book value of the other assets owned by the company was $346,105.63. The book value of the R–P Equipment Company common stock was $159,120.52.

and $24,627.70, respectively.[3] Taxpayer, as successor to Ragland-Potter, paid the resulting deficiency and instituted this refund suit. At trial, the jury determined that the Commissioner had abused his discretion in reducing taxpayer's additions to its bad debt reserves and concluded that the additions were reasonable. The Commissioner now contends that there is no substantial evidence to support the jury's determination and that the district court erred in failing to grant his motion for judgment notwithstanding the verdict.

We conclude that there was no substantial evidence to support the jury's verdict and reverse.

■ When a taxpayer elects to report its bad debt deductions by the reserve method, it subjects itself to the reasonable discretion of the Commissioner in limiting additions to its reserve for bad debts under § 166(c) of the Internal Revenue Code of 1954.[4] Accordingly, a determination by the Commissioner that a taxpayer's additions to its reserve are excessive must be sustained unless the taxpayer can establish that the Commissioner abused his discretion in reducing the claimed deductions. *Akron National Bank & Trust Co. v. United States,* 510 F.2d 1157 (6th Cir. 1975). The taxpayer's burden in this regard is not satisfied by showing merely that its additions to the reserve were reasonable. Even if the taxpayer was reasonable in its determination, it does not follow that the Commissioner was unreasonable in his. *Id.* Thus, this court must determine whether there is sufficient evidence to support a finding that the Commissioner abused his discretion in reducing taxpayer's additions to its bad debt reserve. Upon a review of the record, we conclude that there was insufficient evidence to support the jury's finding of an abuse of discretion. As noted by the Fifth Circuit in *Patterson v. Pizitz,* 353 F.2d 267 (5th Cir. 1965), *cert. denied,* 383 U.S. 910, 86 S.Ct. 895, 15 L.Ed.2d 666 (1966):

The proof here showed only that the Commissioner, in effect, reduced the reserve to accord with taxpayer's loss experience in the light of existing circumstances bearing on credit losses. There are, of course, strong factually based arguments against his judgment in so doing but they fall short of establishing arbitrariness.

It follows that the District Court erred in failing to grant the motion of the Director for judgment notwithstanding the verdict. *Id.* at 270.

The judgment below is reversed with respect to this issue.

### III

■ The parties dispute how much of the purchase price should be allocable to the depreciable tangible property and how much should be allocable to the nondepreciable property, including goodwill. This allocation is necessary both to compute the adjusted basis of the property for the purpose of depreciation and for the determination of gain or loss in the event of subsequent disposition.

This issue was submitted to the jury, which returned a verdict in favor of taxpayer. The district court entered judgment against the Government upon the verdict of the jury.

No useful purpose would be served by a lengthy and detailed recitation of the involved factual disagreement between the parties. Suffice to say that the jury found that taxpayer had correctly determined the value of goodwill and had followed the correct accounting procedures. We conclude that the record shows no reversible error in the verdict of the jury and the judgment of the district court on this point. We, therefore, affirm on this issue.

---

**3.** The amounts allowed by the Commissioner corresponded to taxpayer's actual loss experience for the period in question.

**4.** I.R.C. § 166(c) provides:

In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

## IV

In computing its taxable income for fiscal year 1964, taxpayer deducted $9,231.41 in accounting fees. The Commissioner disallowed the deduction on grounds that the fees represented non-deductible organizational expenses incurred in connection with the purchase of assets and, therefore, were capital expenditures. Taxpayer, on the other hand, argued that the fees were deductible as ordinary and necessary business expenses. In support of taxpayer, the accountant rendering the services in question testified that the fees were at least in part for routine accounting services. The jury determined that the expenses indeed were ordinary and necessary business expenses.

Upon a review of the record, we conclude that there was sufficient evidence to support the jury's verdict and affirm as to this issue.

Accordingly, the judgment of the district court is affirmed in part, reversed in part, and remanded for a recomputation of the amount of taxes to be recovered by taxpayer and further proceedings consistent with this opinion. No costs are taxed. All parties will bear their own costs on appeal.

EDWARDS, Circuit Judge, concurring in part and dissenting in part.

I join the opinion of the court in relation to issues 1, 2 and 4. As to issue three, where the Commissioner accepted appellee's own appraisal as value for the tangible assets, I respectfully dissent, since as to this problem I do not feel appellee made out a case for the jury.