**PACIFIC ROCK & GRAVEL CO., a corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16529.

United States Court of Appeals Ninth Circuit.

Aug. 30, 1961.

Rehearing Denied Oct. 23, 1961.

Theodore J. Elias and Harold Easton by Theodore J. Elias, Los Angeles, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Louise Foster and Harry Marselli, Attorneys, Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Chief, Tax Division, Eugene N. Sherman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before POPE and CHAMBERS, Circuit Judges, and KILKENNY, District Judge.

CHAMBERS, Circuit Judge.

Pacific Rock & Gravel, plaintiff and appellant, has paid some 1954 federal corporation income taxes and claims it overpaid them. Now it sues for them back. After a very brief trial, there being no dispute as to the facts, decision and judgment went for the government, and Pacific Rock appeals.

We are concerned here with "carryback" and "carry-forward" from one year to another of net operating losses as affected by rules on percentage depletion applicable to processed rock, sand and gravel. If the problem were wholly for years prior to 1954, all would admit taxpayer has no point. But if the facts were after January 1, 1954, taxpayer would be right and its position would be

so clear the case doubtless would never have reached the federal courthouse. The question is whether the 1954 Internal Revenue Code, the pertinent portion of which we shall come to shortly, gave the taxpayer something it did not have at midnight December 31, 1953.

For 1952, Pacific Rock reported a net operating loss of $105,748.66. Of this, $1,012.99 was carried back to wipe out taxpayer's 1951 net profit in that amount. Thus, there was $104,735.67 to carry forward after 1952. The year 1953 was a better one, and taxpayer, after deducting $27,131 for percentage depletion, still had a reportable income of $123,309.81. Against this the taxpayer took its full carry-forward loss amount from 1952 of $104,735.67. Upon audit of the 1953 return by the revenue field agent, taxpayer acceded to the offset on the carry-forward credit of the amount of the depletion, or

$27,131. (This depletion was on the 1953 extractions.) Thus the taxable income was increased. Taxpayer agreed to and paid a deficiency of tax on the reconstructed amount.

Having acceded to the disallowance on the 1953 return, taxpayer then asserted he was entitled to carry the sum of $27,-131 as a loss forward to 1955, another profitable year, and accordingly filed an amended return for that year. If it was right, it was entitled to a refund on the tax already paid for 1954. We hold, however, that the district court was correct and the 1952 loss had spent itself before the 1954 Internal Revenue Code was adopted and that the Code did not revive that which, in our opinion, was gone.

We deal here with Section 122 of the 1939 Code of Internal Revenue (as amended) [1] and with Section 172 of the

1. Internal Revenue Code of 1939:

Sec. 122 [As added by Sec. 211(b), Revenue Act of 1939, c. 247, 53 Stat. 863, 867 and as amended by Sec. 105(e) and Sec. 153(b), Revenue Act of 1942, c. 619, 56 Stat. 798, and Sec. 121(g) and Sec. 215 (a), Revenue Act of 1950, c. 994, 64 Stat. 918, 937, NET OPERATING LOSS DEDUCTION.

"(a) **Definition of net operating loss.** As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

"(b) **Amount of carry-back and carry-over.**

\* \* \* \* \* \* \* \*

"(2) **Net operating loss carry-over.**

\* \* \* \* \* \* \* \*

"(B) **Loss for taxable year beginning after 1949.** If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the five succeeding taxable years, except that the carry-over in the case of each such succeeding taxable year (other than the first succeeding taxable year) shall be the excess, if any, of the amount of such net operating loss over the sum of the net income for each of the intervening years computed—

"(i) with the exceptions, additions, and

limitations provided in subsection (d) (1), (2), (4), and (6), and

"(ii) by determining the net operating loss deduction for each intervening taxable year, without regard to such net operating loss or to the net operating loss for any succeeding taxable year and without regard to any reduction specified in subsection (c).

For the purpose of the preceding sentence, the net operating loss for any taxable year beginning after December 31, 1949, shall be reduced by the amount, if any, of the net income for the preceding taxable year computed—

"(i) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

"(ii) by determining the net operating loss deduction for such preceding taxable year without regard to such net operating loss and without regard to any reduction specified in subsection (c).

\* \* \* \* \* \* \* \*

"(c) **Amount of net operating loss deduction.** The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and of the net operating loss carry-backs to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deduction), or, in

1954 Code,[2] which are set forth in the bottom margin.

Underlying our income tax system is the notion that one year is normally an adequate period for measurement of one's income. However, with our great taxes today and the government not yet directly or dependably subsidizing one's losses, business would not be worth the gamble if one's losses one year could not be used to reduce to some extent taxes in years either fore or aft. So some concessions have been made, and we have the operating loss carry-over and carry-back provisions.

Under the 1939 Code, as amended, the scheme was that if one's loss carry-over exactly equalled the percentage depletion for the year to which the carry-over was to be applied, the two mutually consumed each other. That was a limitation on the use of operating carry-over that would always have obtained if the 1939 Code had remained in effect.

But the 1954 Code recognized that if percentage depletions were right as public policy in income tax law, and if operating carry-over losses were right as policy, then it was unfair to deny him with fluctuating income the percentage

the case of a corporation, the normal-tax net income (computed without such deduction and without the credit[s] provided in section 26(h) and (i)).

"(d) Exceptions, additions, and limitations. The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

"(1) The deduction for depletion shall not exceed the amount which would be allowable if computed without reference to discovery value or to percentage depletion under section 114(b) (2), (3), or (4);

\* \* \* \* \* \* \* \*

"(3) No net operating loss deduction shall be allowed; \* \* \*"

(26 U.S.C.1952 ed. § 122.)

2. Internal Revenue Code of 1954:

Sec. 172. Net Operating Loss Deduction.

"(a) Deduction Allowed.—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection.

"(b)\* Net operating loss carrybacks and carryovers.—

"(1) Years to which loss may be carried.—A net operating loss for any taxable year ending after December 31, 1953, shall be—

"(A) a net operating loss carryback to each of the 2 taxable years preceding the taxable year of such loss, and

"(B) a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

"(2) Amount of carrybacks and carryovers.—Except as provided in subsection

(f), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the 'loss year') shall be carried to the earliest of the 7 taxable years to which (by reason of subparagraphs (A) and (B) of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other 6 taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable year shall be computed—

"(A) with the modifications specified in subsection (d) other than paragraph (1), (4), and (6) thereof; and

"(B) by determining the amount of the net operating loss deduction without regard to the net operating loss for the loss year or for any taxable year thereafter, and the taxable income so computed shall not be considered to be less than zero.

"(c) Net operating loss defined.—For purposes of this section, the term 'net operating loss' means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

\* \* \* \* \* \* \* \*

(e) Law applicable to computations.—. In determining the amount of any net operating loss carryback or carryover to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year. The preceding sentence shall apply with respect to all taxable years, whether they begin before, on, or after January 1, 1954. \* \* \*"

(26 U.S.C.1958 ed., § 172.)

---

\* Section 172(b) was amended in 1958 but the amendment has no application here.

depletion which is given him with constant prosperity.

The appellant concedes the case has no controlling authority, but relies heavily on the Senate Committee Report on the 1954 Code.[3] To us, the committee report just justifies the change made to "lessen the differences in tax treatment of firms with fluctuating and those with stable incomes." It goes no further. As we see it, Pacific Rock's argument is that because the change was desirable, it should be made retroactive. This, it probably would not concede is the gist of its argument. But the 1939 rule was applicable for 1953. For 1953, the $104,-735.67 loss carry-forward was reduced to $77,604.67, by deducting the percentage depletion therein of $27,131. When the computation of the 1953 tax was done, taxpayer's carry-over was expended. There was nothing in the form of a carry-over for the 1954 Code to operate upon. Reo Motors v. Commissioner, 338 U.S. 442, 70 S.Ct. 283, 94 L.Ed. 245 is apposite.

One thing that confirms us in our construction is the proposition that carry-over losses are good for five succeeding taxable years. Suppose the net operating loss had occurred in 1949, followed by four years of operating profits. Suppose, under the 1939 Code, the loss had been consumed in installments by offsets of the 1949 loss against profits (less depletion) and against depletion for the four intervening years, that is, some of the loss used each year. We just do not believe the Congress could have intended the change to permit one to go back to each of four years and pick up for 1954 something that was already used. Yet, if the taxpayer is right, that would follow. On the other hand, obviously, one who arrived on January 1, 1954, with a loss carry-over would have the 1954 rule applied. But taxpayer did not have it.

After trouble developed on the proposed offset with respect to Pacific Rock's 1954 taxes, it put forward the proposition that receipts theretofore treated as operating gross profit were, in fact, a long term capital gain. Pacific Rock's basic interest in the operating property was as a lessee. Consumption of rock and other materials was authorized. In turn, Pacific Rock licensed Graham Brothers, Inc., to remove the material on a royalty basis with a minimum guarantee. The interest in Graham Brothers was made assignable without Pacific Rock's consent.

We cannot say what was in the corporate mind of Pacific Rock, but as one reads the document one surmises that Pacific Rock was thinking of retaining an economic depletable interest. One should not be garroted by the tax collector for calling one's agreement by the wrong name. But as we read the whole instrument, we cannot find a capital gains transaction. Voloudakis v. Commissioner, 9 Cir., 274 F.2d 209.

Normally, the tax man can take the instrument as the parties put it together. Rogers v. United States, 9 Cir., 290 F.2d 501.

The judgment is affirmed.

On Petition for Rehearing.

PER CURIAM.

The petition for a rehearing is denied.

CHAMBERS, Circuit Judge (concurring).

As I read the petition for a rehearing, it is clear that appellant thinks I should have given it more of an opinion than that filed on August 30, 1961, and that the composition should be a little better documented with citations. Perhaps, as between appellant and the court, that is correct.

But, also, I must think of the lawyers who are made poor buying copies of the reported decisions of the United States courts of appeal for the various circuits. They are published now almost one volume a month.

Here we have a transitory legal question on construction of a statute and of little precedent value on another day. I

3.  3 U.S.Code Congressional and Administrative News 1954, p. 4062.

do not suppose I could ever convince appellant that I read every decision cited in the briefs, and many more. If I proved that, then its counsel, as good lawyers, I venture would think I did not know how to read the cases. And, if I decorated my effort with a lot of citations, I cannot imagine there would be satisfaction with the selection of citations. Certainly, a lot of citations have never saved me from the Supreme Court's occasional four word mandate of: "Certiorari granted. Judgment reversed."

Let it be clearly understood that counsel's opinion of my opinion was expressed with the utmost gentility.