**John E. CLARK and Norma L. Clark, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 19141.**

United States Court of Appeals Ninth Circuit.

Jan. 25, 1965.

Rehearing Denied March 15, 1965.

Charles E. Cole, Fairbanks, Alaska, for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Jonathan S. Cohen, Dept. of Justice, Washington, D. C., Joseph J. Cella, U. S. Atty., Anchorage, Alaska, Bruce A. Koppe, Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

The Commissioner of Internal Revenue, concluding that certain income treated by John E. Clark and Norma L. Clark, his wife, in their income tax return for 1955 as a long term capital gain, was in fact ordinary income, determined a deficiency. The Clarks paid the additional sum and thereafter brought suit in the district court for its recovery. Trial to a jury resulted in a verdict for the taxpayers; the United States then moved to have the verdict set aside, on the ground that certain evi-

dence essential to taxpayers' claim and conditionally admitted over timely objection, was subject to the parol evidence rule and should have been rejected.[1] The district judge granted this motion and entered judgment against the taxpayers. They have appealed.

Taxpayers contend that Clark was a part owner of Alaska Freightlines, Inc.; that his interest (amounting to 12½%) was an equitable one, acquired under an oral agreement entered into with the corporation in December, 1949, when he was made manager of the corporation's Alaskan operations; that the employment was terminated by mutual consent about January 5, 1952; and that Clark then sold his interest to the corporation for the sum of $350,000, payable in five equal annual installments, one of which constitutes the disputed income.

The United States denies Clark had any interest in the corporation; its position is that his rights and status with respect to the corporation are fully set out in a written document entitled "Employment Contract"; that the contract shows Clark was merely a "key" employee, and that by virtue of the parol evidence rule (the rule) the writing affords the sole proof on the disputed issue.

■■ We do not agree with the taxpayers that the rule applies only in suits between parties to a written contract:

"The theory of the rule is that the parties have determined a particular document shall be the sole embodiment of *their* legal act for certain legal purposes (ante 2425). Hence, so far as that effect and those purposes are concerned they must be found in that writing and nowhere else, no matter who may desire to avail himself of it."

9 Wigmore, Evidence § 2446 at p. 149–150 (3d Ed. 1940).[2]

Here, the taxpayers' claim depends upon a right (i. e., an interest in the corporation) that Clark could acquire only by agreement. The dispositive issue is the agreement. It is immaterial that the litigation which gives rise to the issue is between a party to the writing and a stranger. What is important is whether the writing constitutes the agreement; the answer and the manner of arriving at the answer does not vary simply because one of the litigants had no part in the writing. Jurs v. Commissioner of Internal Revenue, 147 F.2d 805, 810 (9th Cir. 1945).[3]

1. The government's motion to strike this evidence, made during the trial, was denied.

2. Professor Wigmore continues: "But so far as other effects and purposes are concerned the writing has not superseded their other conduct, nor other persons' conduct and it [i.e., that conduct] may still be resorted to for any other purposes for which it is material either by other persons or themselves. * * * The truth seems to be then, that the rule will still apply to exclude extrinsic utterances even as against other parties, provided it is sought to use those utterances *for the very purpose for which* the writing has superseded them as the legal act. Nevertheless, owing to the inaccurate phrasing of the doctrine as commonly laid down—that the rule does not apply to others than the parties to the document—the precedents are often arbitrary and confused and cannot be reconciled by any general distinctions." 3

Jones, Evidence § 1489 at p. 2710 (2d Ed.); 3 Corbin, Contracts, § 596 at p. 572–578 (1960); 4 Williston, Contracts § 647 at p. 1154–1167 (3d Ed.).

3. In Jurs v. Commissioner this court quoted with approval the following statement appearing in Pugh v. C.I.R., 49 F.2d 76, 79 (5th Cir. 1931) cert. den. Pugh v. Burnet, 284 U.S. 642, 52 S.Ct. 22, 76 L.Ed. 546:
"The [taxpayer's] proposal is to give this recorded instrument according to the wish of the parties rather than that attributable to it by law, and thus to control as against the United States the application of the tax laws. While it is sometimes broadly stated that the parol evidence rule has no application to any save parties to the instrument and their privies, * * * yet when an instrument is executed as the final embodiment of an agreement, and becomes the act of the parties, and where the parol evidence is offered merely to

█ Nor are we persuaded that the written contract only partially integrated the agreement of the parties or that the promise assertedly made to Clark was the subject of a collateral oral agreement.[4]

"The inquiry is whether the writing was intended to cover *a certain subject of negotiation* for if it was not then the writing does not embody the transaction on that *subject.* * * Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto. * * * This intent must be sought * * * *in the conduct and language of the parties and the surrounding circumstances.* * * * The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered."

9 Wigmore, Evidence § 2430 (3rd Ed. 1940); Producers Livestock Loan Co. v. Idaho Livestock Auction, Inc., 230 F.2d 892, 894 (9th Cir. 1956). The question of intent tendered a factual issue for the district judge to resolve [Seitz v. Brewers' Refrigeration Co., 141 U.S. 510, 517, 12 S.Ct. 46, 35 L.Ed. 837 (1891)], and after reviewing the entire record in this case we share his conclusion that the parties intended the contract to reflect their entire agreement.

Briefly, the evidence shows that Clark went to work for the corporation in the fall of 1949; his job was to keep the road over the Valdez Pass open for truck travel. The corporation was experiencing financial difficulties and, in addition, lacked sufficient management personnel. At or shortly before hiring Clark, Alfred K. Ghezzi, the president and sole shareholder of the corporation, had sought to have Clark join him in the business, but without success. In December Ghezzi and his associate Jack Garrison decided matters would improve if Clark took charge of all operations in Alaska. They went to the Pass where Clark was working and, after discussing the subject for several days, reached an agreement under which Clark became manager of the corporation for Alaska. The agreement was not reduced to writing, but the parties understood that this would be done at a more opportune time. The following year Garrison's attorney drafted an instrument entitled "Employment Contract" which Clark and the corporation both executed. This contract no doubt fulfilled their earlier understanding for its effective date was January 1, 1950, the approximate date the negotiations were concluded at the Pass and the parties signed no other contract. And the conclusion that the writing was intended by the parties to, and in fact does, incorporate all of the agreements made between the parties is borne out by the writing itself. The "Employment Contract" is carefully drawn and reflects the fact that it was the product of several earlier drafts. More significantly the parties' intention to supplant the oral agreement is indicated by the preamble which confirms the pre-existing oral agreement and goes on to state that " * * * it is for the best interests of the parties to reduce the agreement to writing." The substantive provisions lend additional weight to the conclusion that the contract was a com-

---

vary the legal effect of its terms, the rule operates to protect all whose rights depend upon the instrument though not parties to it. * * * That by some other form of instrument the rights of the United States would have been different is beside the question. The parties abide by this instrument as they made it. The law, and not their wish or understanding, must control its legal effect on the incidence of taxation."

4. " ' * * * [W]here a portion only of the contract between the parties has been reduced to writing it is proper to allow parol evidence as to the portion of the agreement not included in the writing.' " Gruen Watch Co. v. Artists Alliance, 191 F.2d 700, 704 (9th Cir. 1951).

plete integration of the parties' earlier negotiations. Not only is Clark's status as an employee, and the services he is to render the corporation, explicitly set forth, but also the amount and nature of his compensation is detailed; and we attach significance to the fact that his compensation was geared to the financial success of the corporation. To illustrate: the contract, after providing for a monthly "salary" of $1,000, makes further provision for payment of an annual "bonus" consisting of,

"(a) a sum equivalent to 12½% of the net profit of the corporation, and

"(b) a sum equivalent to 12½% between the book value and the actual appraised value of the physical assets of the corporation * * *."

By thus including the bonus provision, tacit recognition was accorded Clark's vital role in the corporation's success. But there is no warrant to construe these provisions as the grant of an ownership interest. And it would defy logic to propose that it was the parties' intention to confer such an interest on Clark by separate agreement, particularly when this asserted interest and the bonus provision coincide in amount. Moreover, we deem it highly improbable, under the facts in this record, that the agreement would be fractionated in the manner urged by taxpayers when this would leave to the uncertainty of human recollection an intangible of such value and consequence.[5]

■ The contention that the extrinsic evidence was admissible under the ambi-

guity exception to the rule also lacks merit. The ambiguity is said to inhere in the second of the two bonus provisions. Taxpayers argue "obviously this [provision] is patently ambiguous for it would mean that at the end of the second year [Clark] would be entitled to 25%, and at the end of the third year he would be entitled to 37½%." The contract provides for no such cumulative annual increase and we are at a loss to understand the basis for taxpayers' assertion. But even if the contract was thus "patently ambiguous" the rule would not be relaxed to permit taxpayers to establish by extrinsic evidence an entirely different agreement. Rather, the proof would be limited to an explanation or clarification of the meaning of the bonus provision.

■ And finally, we are satisfied that this is not a case where the taxpayers are entitled to avoid the legal effect of and the tax consequences arising from the contract, on the ground that the transaction reflected therein was fictitious.[6] "One should not be garrotted by the tax collector for calling one's agreement by the wrong name." Pacific Rock & Gravel Co. v. United States, 297 F.2d 122, 125 (9th Cir. 1961). But there is far too little suggested by this record to justify the conclusion that the transaction was anything more than the label given by the contract implies. "Normally, the tax man can take the instrument as the parties put it together." Pacific Rock & Gravel Co. v. United States, supra, p. 125.

The judgment is affirmed.

---

5. To illustrate: In 1941 Ghezzi had orally promised Clark an interest in business, but Clark "lost out" because the promise was not kept.

Clark also testified that he particularly wanted the instant agreement "put in writing" to protect his family in the event of his death. Leaving part in parol would thus have been both unwise and unlikely. In Williston on Contracts, § 638 (1961) it is said: "The test of admissibility is much affected by the inherent probability of parties who contract under the circumstances in question simultaneously making both the agreement

in writing which is before the court and also the alleged parol agreement. The point is not merely whether the court is convinced that the parties before it in fact do this, but whether parties so situated generally would or might do so."

6. We are cited to the Supreme Court's broad observation in Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226 (1939) that "In the field of taxation, administrators of the laws and the courts are concerned with substance and realities and formal written documents are not rigidly binding."