EDITH BROWN CLEMENT, Circuit Judge,
concurring in the judgment.
This result has more to do with the arguments that the FDIC did not raise than the innate correctness of the Landlords’ position.
*984 The FDIC argues that the Landlords lack standing because they cannot, as a non-third-party beneficiary to the contract, show that the properties were transferred to Chase. The Landlords have no such issue. To demonstrate standing, the Landlords need to show (1) “an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical,” (2) “a causal connection between the injury and the conduct complained of,” and (3) that it is “likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted). The Landlords make that showing. They claim to have (1) suffered an injury (loss of rents), that was (2) causally connected to Chase’s conduct (not paying rents that were due), and (3) could be redressed by an award of unpaid rents. Moreover, the Landlords’ interest in rent payments from assignees is legally protected by Texas law. See, e.g., Amco Trust, Inc. v. Naylor, 159 Tex. 146, 317 S.W.2d 47, 50 (1958) (“Liability to the original lessor for the payment of rent ... may arise from ... privity of estate.... One who ... acquires the entire leasehold estate becomes the tenant in place of the lessee and is in privity of estate with the lessor. An as-signee is accordingly liable for the rent reserved in the lease.”)
The FDIC’s counterargument that non-third-party beneficiaries cannot interpret and enforce a contract against the understanding of the contracting parties improperly tries to stretch a question of contract law into a dubious principle of constitutional law. Non-third-party beneficiaries to contracts usually cannot show that they have suffered an injury to a legally protected interest because contract law does not recognize and compensate non-third-party beneficiaries for the injuries that they often suffer when a contracting party fails to comply with a contract. But when jurisdiction is otherwise proper, there is no inherent bar prohibiting a stranger to a contract from asking the court to interpret a contract that has bearing on its case.[1] Texas law vests the Landlords with the legitimate protected interest needed to assert their claim for unpaid rent in federal court. This is enough to create standing.
Rather than having an inherent standing problem, the Landlords should have difficulty demonstrating that the Purchase and Assumption Agreement actually transferred the leases outright to Chase. The Landlords’ position is almost certainly inconsistent with the actual intent of the contracting parties; they provide no persuasive reason why Chase would want its option to refuse certain properties to extend only to constructed and operating bank branches, and not also to properties for future bank premises. The vacant lots are of little value to Chase if not used as bank premises. And the parties’ course of performance — which “is often the strongest evidence” of a contract’s meaning[2]— *985 also supports that conclusion. From the beginning, both parties’ behavior has reflected a belief that the contract grants Chase the option to refuse the leases, regardless of whether a branch had yet been constructed.
Accordingly, though the district courts had the power to consider the cases, Chase should have been able to prevent the Landlords from proving that the leases were transferred. Given the record evidence substantiating the contracting parties’ intent, the FDIC and Chase likely had colorable arguments (and supporting evidence) regarding the proper interpretation of the Purchase and Assumption Agreement. Even if they thought that those arguments were hopeless given the plain text of the contract, Chase and the FDIC could have pursued a contract reformation, see, e.g., Restatement (Second) of Contracts § 155 (1981), or simply amended the Purchase and Assumption Agreement.
All of those strategies would have been preferable to attacking courts’ ability to hear cases brought by landlords against assignees — a question on which the FDIC is on the wrong side of (1) hundreds of years of legal history, (2) previous legal positions adopted by the federal government when it itself is a landlord, see, e.g., Alaska Statebank, 111 IBLA 300, 308-09 (IBLA 1989), and (3)' circuit precedent rejecting attempts by contracting parties to have contracts interpreted “according to the[ir] wishes ... rather than [the meaning] attributable to it by law” when the parties neither claim mistake nor omission in drafting the contract, nor seek reformation. Great Am. Ins. Co., 302 F.2d at 334-35. The FDIC would have been better served by arguing that this contract did not transfer these leases.
But Chase should not expect to win on arguments that it does not pursue. The district courts — based upon the arguments raised and the evidence before them— properly entered judgments for the Landlords. The plain text of the contract indicates the leases at issue were transferred outright and the covenant to pay rent runs with the land. On appeal, the only real error that the FDIC successfully highlights is the district courts’ choice to apply Texas law to interpret the Purchase and Assumption Agreement. Though Texas state law provides the Landlords’ cause of action, federal common law should have been used to interpret the Purchase and Assumption Agreement.[3] However, the FDIC does not point out any consequence from the district courts’ error, and concedes that “the outcome is likely the same” under either body of law. In light of the FDIC’s concessions and the plain text of the Purchase and Assumption Agreement, it appears that any error was harmless, and that the district courts’ judgments should be affirmed.

. See, e.g., J.R. Fulton v. L & N Consultants, Inc., 715 F.2d 1413, 1418-21 (10th Cir.1982); United States v. Ivey, 414 F.2d 199, 203 (5th Cir.1969); Clark v. United States, 341 F.2d 691, 693-95 (9th Cir.1965); Great Am. Ins. Co., N.Y. v. Gulf Marine Drilling No. 1, 302 F.2d 332, 334-35 (5th Cir.1962); Pugh v. Comm'r, 49 F.2d 76, 79 (5th Cir.1931); cf. Lemke v. Sears, Roebuck & Co., 853 F.2d 253, 254-55 & n. 4 (4th Cir.1988) (remanding case for reconsideration of a non-party’s claims that they were released from liability by a prior contract even though the court "strongly question[ed] whether the language of the ... release evidenced a clear intent to benefit” the non-party).

. Restatement (Second) of Contracts § 202 cmt. g (1981).

. [FJederal common law governs the construction of government contracts in the usual case, Clem Perrin Marine Towing, Inc. v. Pan. Canal Co., 730 F.2d 186, 189 (5th Cir. 1984), and even if this is not “the usual case,” as Clause 13.4 of the Agreement specifies that it should be interpreted according to federal law (or Washington law if there is an “absence of controlling federal law”), Texas choice-of-law principles would still require the application of federal common law (or Washington law). See, e.g., Smith v. EMC Corp., 393 F.3d 590, 597 (5th Cir.2004).